Rafael ANCHIA, Tracey Banks–North Central Women's Health Partners, Daniel Barrientos, Barbie Barta, Bui Batchler, Darrell Blacklock, Herbert Blase, John Cardenas, Renee and David Carter, John Chen, Jane Conner, Richard D'Antoni, Anna DeCamp, Luis Escobedo, Felix Exelbierd, Dianne Farmer, Suzette Felder, Pat Henry, Chris Higgins, Sai Ho, Jeff Klein, Jake Krocheski, Jim Lee, Russell Meier, Allen Miller, Richard Naftalis, Christopher Nelson, Rohit Parmar, Gretchen Pippins, Toni and Eric Pratt, Jorge Puricelli, David Rhodes, John Richardson, Carlton Rizer, Matt Rosen, J.J. Ruffino, Cindy and David Schrob, Shahan Shaikh, Elizabeth Stroup, Jorge Torres, Eddie Towles, Charles Valdes, Amy Van Brunt/Van Brunt Enterprises, Inc., Jaya Vasandani, Kim Wagner, Marlin Willesen, and Okim Wood, Appellants

v.

DAIMLERCHRYSLER AG, Appellee.

No. 05–06–01277–CV.

Court of Appeals of Texas, Dallas.

July 23, 2007.

Allen P. Miller, Law Office of Allen P. Miller, Dallas, for appellants.

E. Paul Cauley, Jr., S. Vance Wittie, Sedgwick, Detert, Moran & Arnold, Dallas, Dr. Matthew J. Kemner, San Francisco, CA, for appellee.

Before Justices WHITTINGTON, BRIDGES, and LANG.

## OPINION

Opinion by Justice WHITTINGTON.

Appellants challenge the trial court's order granting appellee's special appearance. In three issues, appellants contend the trial judge erred in making certain findings of fact and conclusions of law and granting appellee's special appearance because appellee has "purposefully and voluntarily directed its activities toward the State of Texas." We affirm the trial court's order.

### Background

Appellee is a German stock company with its effective place of business in Stuttgart, Germany. It manufactures Mercedes–Benz automobiles in Germany and sells the vehicles in Germany to Mercedes–Benz USA, LLC (MBUSA), a Delaware limited liability company with its principal place of business in New Jersey. MBUSA is wholly-owned by Daimler-Chrysler North American Holding Corporation (DNAHC). Appellee owns one hundred percent of the stock of DNAHC. Therefore, MBUSA is a wholly-owned indirect subsidiary of appellee. MBUSA holds the rights to import, distribute, and advertise Mercedes–Benz vehicles and component parts in the United States, including Texas.

Each appellant in this case purchased a model CLK430 Mercedes–Benz automobile. Appellants sued appellee and other defendants, alleging the front bumpers of

the automobiles are defective. In their petition, appellants allege appellee is subject to jurisdiction in Texas because appellee

> has purposefully and voluntarily directed its activities toward the State of Texas with respect to the manufacture and sale of Mercedes–Benz automobiles, including the CLK430's, and has purposefully availed itself of the Texas market by causing automobiles manufactured by it in Germany, including the CLK430's, to be distributed and sold in Texas through its wholly owned subsidiary [MBUSA] which is controlled by [appellee].

Appellee filed a special appearance, contending it was not subject to personal jurisdiction in Texas. After the trial judge granted appellee's special appearance, this appeal ensued.

### Standards of Review

 Whether a trial court has personal jurisdiction over a non-resident defendant is a question of law. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002). The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *BMC Software*, 83 S.W.3d at 793. A defendant must then negate all bases for personal jurisdiction alleged by the plaintiff. *BMC Software*, 83 S.W.3d at 793. In reviewing a trial judge's ruling on a special appearance, we examine all the evidence in the record to determine if the nonresident defendant negated all possible grounds for personal jurisdiction. *Reiff v. Roy*, 115 S.W.3d 700, 705 (Tex. App.-Dallas 2003, pet. denied).

 However, a defendant is not required to negate the plaintiff's assertion that personal jurisdiction exists under an alter ego theory. *See BMC Software*, 83 S.W.3d at 798–99. Jurisdiction based on an alter ego theory cannot be found unless the "party seeking to ascribe one corporation's actions to another by disregarding their distinct corporate entities [proves] this allegation." *BMC Software*, 83 S.W.3d at 798. The underlying reason for shifting the burden to the claimant is that "Texas law presumes that two separate corporations are indeed distinct entities." *BMC Software*, 83 S.W.3d at 798. Although the Texas Supreme Court addressed this issue in the context of a corporate alter ego allegation, the holding can be extended logically to the assertion of corporate control through stock ownership made in this case. *See Wolf v. Summers–Wood, L.P.*, 214 S.W.3d 783, 788 (Tex. App.-Dallas 2007, no pet.) (extending *BMC Software* holding to allegations of corporate fiction or sham); *Tri–State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 250 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (extending *BMC Software* holding to assertion of officer liability because same presumption of legal separateness exists with regard to corporation and its officers).

 In addition, a trial judge must frequently resolve fact questions before deciding the jurisdictional question. *BMC Software*, 83 S.W.3d at 794. If a trial judge issues findings of fact and conclusions of law in ruling on the special appearance, an appellant may challenge the legal and factual sufficiency of the evidence to support them. *BMC Software*, 83 S.W.3d at 794. A legal sufficiency challenge fails if there is more than a scintilla of evidence to support the finding. *See BMC Software*, 83 S.W.3d at 795. In reviewing a finding for factual sufficiency, we may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *See Hoffmann v. Dandurand*, 180

S.W.3d 340, 345 (Tex.App.-Dallas 2005, no pet.). We review the trial judge's legal conclusions de novo. *BMC Software*, 83 S.W.3d at 794.

A Texas court may exercise personal jurisdiction over a defendant only if the defendant has minimum contacts with the state and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *See BMC Software*, 83 S.W.3d at 795 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). To establish minimum contacts, the defendant must have purposefully availed itself of the privilege of conducting activities inside Texas and enjoyed the benefits and protections of Texas laws. *Reiff*, 115 S.W.3d at 705. The defendant's activities must justify a conclusion the defendant could reasonably anticipate being called into a Texas court. *Reiff*, 115 S.W.3d at 705.

Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either general or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *BMC Software*, 83 S.W.3d at 795–96. If the defendant has had continuous and systematic contacts with the forum state, the defendant is subject to general jurisdiction regardless of whether the defendant's alleged liability arises from those contacts. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex.2007). However, when the plaintiff alleges the defendant is subject to specific jurisdiction, we focus the minimum contacts analysis on the relationship among the defendant, the forum, and the litigation. *Helicopteros*, 466 U.S. at 414, 104 S.Ct. 1868; *Moki Mac*, 221 S.W.3d at 575–76; *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790 (Tex.2005).

Appellants contend appellee is subject only to specific jurisdiction. Specific jurisdiction is established if the nonresident defendant's alleged liability arises from or is related to activity conducted within the forum. *BMC Software*, 83 S.W.3d at 796. There must be a substantial connection between a nonresident defendant's forum contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585.

The "touchstone" of jurisdictional due process analysis is "purposeful availment." *Michiana*, 168 S.W.3d at 784 (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). For a Texas forum to exercise specific jurisdiction, the defendant must have made minimum contacts with Texas by purposefully availing itself of the privilege of conducting activities here and its liability must have arisen from or related to those contacts. *Moki Mac*, 221 S.W.3d at 576; *Michiana*, 168 S.W.3d at 784 ("[I]t is essential in each case that there be some act by which the *defendant purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (quoting *Hanson*, 357 U.S. at 253, 78 S.Ct. 1228, emphasis added by *Michiana* court)). We consider several factors in determining "purposeful availment." *See Michiana*, 168 S.W.3d at 785; *Lewis v. Indian Springs Land Corp.*, 175 S.W.3d 906, 913–15 (Tex.App.-Dallas 2005, no pet.). First, it is only the defendant's contacts with the forum that count: purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of ... the 'unilateral activity of another party or a third person.'" *Michiana*, 168 S.W.3d at 785 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Second, the acts relied upon must be "purposeful" rather

than "random, isolated or fortuitous." *Michiana,* 168 S.W.3d at 785 (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). Third, a defendant must seek some benefit, advantage, or profit by "availing" itself of the jurisdiction. By invoking the benefit and protections of a forum's laws, a nonresident consents to suit there. *Michiana,* 168 S.W.3d at 785 (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)); *Lewis,* 175 S.W.3d at 914. However, a nonresident may "purposefully avoid a particular forum by structuring its transactions in such a way as to neither profit from the forum's laws nor subject itself to jurisdiction there." *Moki Mac,* 221 S.W.3d at 575 (quoting *Burger King Corp.,* 471 U.S. at 473, 105 S.Ct. 2174).

In addition to minimum contacts, the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *BMC Software,* 83 S.W.3d at 795. In making that determination, we consider: (i) the burden on the nonresident defendant; (ii) the forum state's interest in adjudicating the dispute; (iii) the plaintiff's interest in obtaining convenient and effective relief; (iv) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (v) the shared interest of the several states in furthering substantive social policies. *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559; *Guardian Royal Exch. Assurance, Ltd. v. English China Clays,* 815 S.W.2d 223, 231 (Tex.1991); *Lewis,* 175 S.W.3d at 915.

### Evidentiary Challenge

After appellee filed its verified special appearance, appellants filed a brief in opposition. In support of their arguments, appellants offered the affidavit of John T. Evans, the owner of a Mercedes–Benz vehicle. The trial judge declined to consider Evans's affidavit on the ground it was conclusory. Appellants assign this ruling as error. We disagree.

Texas Rule of Civil Procedure 120a requires affidavits submitted in opposition to a special appearance to be made on personal knowledge and set forth specific facts that would be admissible in evidence. Tex.R. Civ. P. 120a(3). In his affidavit, Evans states appellee controls the distribution system that brings Mercedes–Benz automobiles to Texas; appellee purposefully distributes its cars to the United States, including Texas; appellee has sold over 10 billion Euros worth of Mercedes–Benz automobiles in the United State each year from 2000 through 2005; and there has been more than one Mercedes–Benz dealer in Texas for more than the past twenty-five years. Evans claims these statements are based on his review of appellee's filings with the Security and Exchange Commission (SEC), the affidavit of Dr. Peter Herz, appellee's associate counsel, and "other matters of [Evans's] personal knowledge." However, these documents are not attached to the affidavit or otherwise included in the record. Further, nothing in Evans's affidavit establishes Evans's competence to review these documents and reach the expressed opinions. In light of this, the trial judge did not err in refusing to consider these statements. *See Earle v. Ratliff,* 998 S.W.2d 882, 890 (Tex.1999) (holding summary judgment can be granted on affidavit of interested expert witness, but affidavit must not be conclusory); *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 82–83 (Tex.1992) (finding conclusory allegation that failure to answer was due to accident or mistake insufficient to prove accident or mistake without explanation of nature of mistake); *Robertson Tank*

*Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 361 (Tex.1971) (holding employee's statement that he was in course and scope of work when collision occurred is legal conclusion "without probative value and cannot raise a fact issue or support a finding of fact"); *Cas. Underwriters v. Rhone*, 134 Tex. 50, 53–54, 132 S.W.2d 97, 99 (1939) (holding worker's testimony that he was working for one employer rather than another at time of injury was "bare conclusion" and of no "probative force"); *King v. Wells Fargo Bank, N.A.*, 205 S.W.3d 731, 735 (Tex.App.-Dallas 2006, no pet.) (holding conclusory statements not proper summary judgment evidence).

Evans's final statement in his affidavit is that there has been one or more Mercedes–Benz dealer in Texas for the last twenty-five years. However, appellants pleaded jurisdiction over appellee based solely on appellee's availing itself of the Texas market through its control of MBUSA. Appellants do not dispute appellee has no control over the independent retail dealers in Texas and, accordingly, Evans's statement regarding the existence of Mercedes–Benz dealerships in Texas does not impact the jurisdictional analysis.

We conclude the trial judge did not err in refusing to consider Evans's affidavit; therefore, we do not consider those statements in weighing the sufficiency of the

evidence. Furthermore, even if we were to consider the contested portions of Evans's affidavit, we would reach the same conclusion.

### Findings of Fact

 Appellants next contend several of the trial judge's findings are legal conclusions and that there is no evidence to support the finding appellee did not create, employ, or control any distribution system to Texas.[1]

In finding number 7, the trial judge found that "[o]nce title to the vehicles passes to MBUSA in Germany, DCAG has no control over their ultimate destination within the United States." In finding number 28, the trial judge found "DCAG has never created, employed or controlled any distribution system in or to Texas." Appellants challenge both these findings although in their reply brief, appellants withdrew their challenge to finding seven to the extent the ultimate destination of the vehicle means the consumer who purchased the car. Appellants concede appellee has no control over to whom the retail dealer sells the vehicle.

Appellants first argue whether appellee had control over MBUSA's distribution system is a question of law. We disagree.

---

1. Appellants raised other issues which we do not address. In their original appellate brief, appellants challenge the trial judge's finding that appellee never marketed Mercedes–Benz vehicles through a distributor in Texas who agreed to serve as a sales agent for the automobiles. However, because appellants withdrew their challenge to this finding in their reply brief, we do not address this argument. In their reply brief, appellants challenge the factual and legal sufficiency of the evidence to support several findings of fact and argue jurisdiction is proper because appellee employed MBUSA's distribution system. Appellants pleaded jurisdiction over appellee based solely on its control of MBUSA and did not

argue to the trial judge that appellee employed MBUSA's distribution system. Because appellants did not present this argument to the trial judge, they may not raise it for the first time on appeal. Furthermore, appellants did not argue this issue in their original appellate brief. The Texas Rules of Appellate Procedure do not allow an appellant to include in a reply brief a new issue not raised in the appellant's original brief. Tex. R.App. P. 38.3; *Dallas County v. Gonzales*, 183 S.W.3d 94, 104 (Tex.App.-Dallas 2006, pet. denied). Therefore, these issues are not properly before this Court, and we decline to address them.

The amount of control, if any, appellee asserted over MBUSA and its distribution network is a question of fact. *See CSR Ltd. v. Link,* 925 S.W.2d 591, 595 (Tex. 1996) (orig. proceeding) (including control over distribution system that brought product to Texas in list of factors used to analyze whether defendant purposefully availed itself of Texas market); *Radaszewski v. Telecom Corp.,* 981 F.2d 305, 309 (8th Cir.1992) (degree of control exerted by parent over subsidiary a question of fact in determining personal jurisdiction over parent corporation).

Appellants next challenge the legal sufficiency of the evidence to support the trial judge's finding appellee did not control MBUSA or the distribution system that brought the vehicles to Texas, arguing appellee necessarily had such control because MBUSA is a wholly-owned indirect subsidiary of appellee. Although appellants rely solely on appellee's ownership of stock to establish control over MBUSA and have disclaimed any alter ego theory, alter ego law is instructive regarding whether personal jurisdiction can be asserted over a parent company simply because its indirect subsidiary does business in the forum state. *Wolf,* 214 S.W.3d at 788.

 Generally, a foreign parent company is not subject to jurisdiction in a forum merely because a subsidiary is present or doing business there. *BMC Software,* 83 S.W.3d at 798–99; *3–D Elec. Co. v. Barnett Constr. Co.,* 706 S.W.2d 135, 139 (Tex.App.-Dallas 1986, writ ref'd n.r.e.). Even ownership of one hundred percent of the stock of a subsidiary is not enough to impute the subsidiary's contacts to the foreign parent. *Hitachi Shin Din Cable, Ltd. v. Cain,* 106 S.W.3d 776, 787 (Tex.App.-Texarkana 2003, no pet.). We do not disregard separate legal entities simply because one owns stock in the other unless the relationship is being used to defeat public convenience or to justify wrongs. *BMC Software,* 83 S.W.3d at 798; *3–D Elec.,* 706 S.W.2d at 138. That MBUSA is a wholly-owned indirect subsidiary of appellee is not enough, standing alone, to subject appellee to jurisdiction in Texas.

 Appellants finally argue there is no evidence to support the trial judge's finding appellee did not control the distribution system that brought the vehicles to Texas because the evidence established only that appellee did not create, employ, or control the distribution system in, rather than to, Texas. However, in his affidavit, Herz stated appellee sold the vehicles to MBUSA in Germany. Further, MBUSA has the exclusive right to import, distribute, and advertise Mercedes–Benz automobiles in the United States and is responsible for the distribution of the vehicles in the United States. Herz also stated that although MBUSA is an indirect subsidiary of appellee, appellee and MBUSA are independent companies and strictly observe all corporate formalities. Appellee does not exercise any day-to-day control over MBUSA, including control with respect to sales of Mercedes–Benz vehicles and component parts in the United States, and does not exercise control over any Mercedes–Benz retail dealer in Texas. Finally, Herz stated appellee has never created, employed, or controlled any distribution system in Texas, and appellee did not sell any vehicle to appellants.

The record contains more than a scintilla of evidence that appellee did not control MBUSA or the distribution system that brought the Mercedes–Benz automobiles to Texas. Accordingly, the evidence is legally sufficient to support the trial judge's finding.

 In findings eleven, thirteen, and twenty-nine, the trial judge determined ap-

pellee did not do business in Texas, did not engage in business in Texas, and has never purposefully or voluntarily directed its activities toward Texas with respect to the manufacture and sale of Mercedes–Benz automobiles. Appellants contend these findings are legal conclusions dependent on the determination of whether appellee purposefully availed itself of the Texas market. However, even if these findings are legal conclusions, they are supported by unchallenged findings of fact.

Based on Herz's affidavit, the trial judge found appellee did not sell Mercedes–Benz automobiles in Texas, did not advertise in Texas, and did not contact any customers in Texas. Appellee is not qualified, licensed, or authorized to do business in Texas and does not maintain an office, agency, or representative in Texas. Appellee does not have officers, employees, or agents stationed to work in Texas. Appellee does not conduct any sales, service, or other business activities in Texas. Appellee does not have a bank account in Texas. Appellee owns no real property in Texas and has never paid Texas taxes. Appellee has never sold any Mercedes–Benz vehicle in Texas and has never designed any Mercedes–Benz vehicle specifically for the Texas market.

Further, based on Herz's affidavit, the trial judge found appellee is a German stock company, appellee sold automobiles to MBUSA in Germany, and title to the vehicles passed to MBUSA in Germany. *See Schott Glas v. Adame,* 178 S.W.3d 307, 317 (Tex.App.-Houston [14th Dist.] 2005, pet. denied) (contract term ensuring title passes outside forum state is jurisdictionally significant, tending to show nonresident is not invoking benefits and protections of forum's laws). Appellee and MBUSA are separate companies and observe all necessary corporate formalities. MBUSA is responsible for importing the vehicles to the United States, distributing the vehicles throughout the United States, and providing service and sales support in the United States. Appellee does not exercise day-to-day control over MBUSA or over any Mercedes–Benz retail dealer in Texas.

These unchallenged findings establish appellee structured its business to avoid doing or engaging in business in Texas. Thus, appellee did not purposefully avail itself of the Texas market. *See Michiana,* 168 S.W.3d at 785–86; *see also Moki Mac,* 221 S.W.3d at 576–79; *Elk River, Inc. v. Garrison Tool & Die, Ltd.,* 222 S.W.3d 772, 784–85 (Tex.App.-Dallas 2007, no pet.). We overrule appellants' objections to the trial judge's findings of fact.

### Conclusions of Law

Appellants offer objections and comments to nineteen of the trial judge's thirty-two conclusions of law. As to appellants' comments on the accuracy and completeness of conclusions six (breadth of the Texas long-arm statute); seven (standard for asserting personal jurisdiction); eight and nine (relating to general jurisdiction); eleven (statement of law on fair play and substantial justice prong of jurisdictional analysis); fifteen (necessity for contacts to relate to litigation in specific jurisdiction analysis); sixteen (minimum contacts must be directed toward forum state); seventeen (merely placing product into stream of commerce insufficient to establish minimum contacts); twenty-six, twenty-seven, and twenty-eight (concluding based on *Samuels v. BMW of North Am., Inc.,* 554 F.Supp. 1191, 1194 (E.D.Tex.1983) that MBUSA, not appellee, is natural defendant in case); and twenty-nine (significant weight to be given to unique burdens placed on foreign defendants), we conclude, after reviewing the trial judge's conclusions de novo, that there is no error in these con-

clusions of law that requires reversal of the trial court's order. *See BMC Software,* 83 S.W.3d at 794.

In conclusion of law number ten, the trial judge concluded that "[i]n addition to minimum contacts, in order for there to be personal jurisdiction over a non-resident defendant such as DCAG, 'plaintiffs must show that the exercise of *in personam* jurisdiction comports with fair play and substantial justice.' " Appellants challenge this conclusion, based on *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990), as improperly placing the burden of proof to establish jurisdiction on appellants. Because we have previously concluded no minimum contacts exist in this case, we do not reach the issue of "fair play and substantial justice." Therefore, we need not address this argument. *See* Tex.R.App. P. 47.1.

In conclusion nineteen, the trial judge determined appellee's alleged liability does not arise out of or relate to any conduct purposefully directed toward Texas because appellee had nothing to do with the vehicles once title passed to MBUSA in Germany and appellee had no control over where MBUSA distributed the vehicles. In conclusion twenty-three, the trial judge concluded the fact MBUSA was an indirect subsidiary of appellee was insufficient to establish appellee controlled the distribution system that brought the automobiles to Texas. Appellants challenge these conclusions, again contending that because MBUSA is appellee's wholly-owned indirect subsidiary, appellee necessarily had control over the distribution of the vehicles. However, as noted previously, stock ownership alone is insufficient to impute the jurisdictional contacts of a subsidiary to the parent corporation. *BMC Software,* 83 S.W.3d at 798; *3–D Elec.,* 706 S.W.2d at 138.

Appellants finally challenge conclusions thirty, thirty-one, and thirty-two that the exercise of jurisdiction over appellee would be burdensome and inconvenient to appellee; Texas's interest in adjudicating the dispute, and appellants' interest in obtaining relief, would not be diminished by dismissing appellee because the claims could continue against other defendants; and to require appellee to defend itself in Texas would violate traditional notions of fair play and substantial justice. We have already determined, based on findings of fact unchallenged by appellants, that there is sufficient evidence appellee did not purposefully avail itself of the Texas market and did not have minimum contacts sufficient to support specific jurisdiction in Texas. Further, merely because MBUSA is a wholly-owned indirect subsidiary of appellee does not subject appellee to jurisdiction in Texas based on MBUSA's contacts with Texas. Accordingly, we need not consider whether the exercise of jurisdiction over appellee would violate traditional notions of fair play and substantial justice.

We overrule appellants' three issues and affirm the trial court's judgment.