Opinion issued September 25, 2008












In The

Court of Appeals

For The

First District of Texas






NO. 01-07-01035-CV






CHOICE AUTO BROKERS, INC., Appellant


V.


CARL DAWSON, Appellees






On Appeal from the 152nd District Court

Harris County, Texas

Trial Court Cause No. 2006-62501






O P I N I O N

 In this accelerated, interlocutory appeal, appellant, Choice Auto Brokers, Inc.
("CAB"), challenges the trial court's order denying its special appearance.

 We reverse and render.

Background


 CAB is a Florida corporation that sells automobiles using both its own website
and the internet auction site, eBay. (1)
 Dawson is a Texas resident, who purchased an
automobile from CAB. Dawson found the automobile on CAB's website, which had 
a hyperlink to eBay to enable visitors to bid on vehicles through the online auction
site. Because the website required that bidders who lacked a certain bidding history
on eBay call before placing a bid, Dawson called CAB. He later purchased the car
through eBay using the auction-ending function, "Buy It Now." Dawson's father
took receipt of the car in Florida on Dawson's behalf. Due to mechanical problems,
Dawson's father was unable to drive the car to Texas, and Dawson had it shipped to
Texas.

 Dawson sued for damages under the DTPA, alleging that CAB had not been
truthful about the car's age and condition. Dawson argued that jurisdiction was
proper because: (1) CAB had previously sold 43 vehicles to Texas residents over a
three-year period; (2) CAB transported or arranged for the transportation of 19 of
these to Texas; (3) CAB's website states in more than one place that a bid on a
vehicle is a legally binding contract. In addition, CAB's website links directly to
eBay, where customers can bid on the vehicles advertised on CAB's website.

 CAB filed a special appearance, alleging that it does no business in Texas and
was, therefore, not subject to personal jurisdiction in Texas. CAB stipulated that:
(1) it maintained a website at the time of the sale; (2) visitors to its website could
view pictures and specific details of vehicles it was offering for sale; (3) via the
website, visitors could schedule a test drive of the vehicles; and (4) via the website,
visitors could request additional information. CAB also provided printouts as
exemplars of how the website looked at the time of the sale. In an affidavit attached
to Defendant's Second Amended Special Appearance, Jean-Luc Ferrigno, the
president of CAB, testified that: (1) CAB is a Florida corporation that does no
business in the State of Texas; (2) CAB has no offices, employees, or facilities in
Texas, nor does CAB own any property in Texas; (3) CAB does not engage in
advertising that specifically targets Texas residents, as opposed to the residents of any
other state; (4) CAB's advertising consists of paying a company that promotes
vehicles for sale on behalf of numerous clients through internet listings that do not
target the residents of any particular state; (5) unless otherwise requested by a client,
the place of delivery is Florida; (6) CAB offers some of its products for sale through
eBay and provides a link to eBay from its web page; (7) customers cannot purchase
products from CAB through CAB's website; (8) customers can call CAB directly to
negotiate a sale over the telephone; (9) the "Make an Offer" function on the CAB
website sends an email to CAB; (10) in response to such an email, CAB calls the
customer to discuss a potential sale; (11) CAB does not ship vehicles to Texas but
will arrange for transportation outside of Florida through a third party; (12) a
customer can request a test drive through the website, but the test drive must occur
in Florida; and (13) CAB provides no warranties.

 The trial court denied CAB's special appearance, and CAB timely appealed.

Standard of Review

 The existence of personal jurisdiction is a question of law reviewed de novo
by this Court. BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789 (Tex. 2002).
However, this question must sometimes be preceded by resolving underlying factual
disputes. Id. at 794. When, as here, the trial court does not issue fact findings, we
presume that the trial court resolved all factual disputes in favor of its ruling. Am.
Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex. 2002).


Personal Jurisdiction

 "Texas courts may assert personal jurisdiction over a nonresident defendant
only if the Texas long-arm statute authorizes jurisdiction and the exercise of
jurisdiction is consistent with federal and state due process standards." Id. (citing
Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d
223, 226 (Tex. 1991)); see Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-.045
(Vernon 2008) (Texas long-arm statute). The long-arm statute allows Texas courts
to exercise jurisdiction over a nonresident defendant that "does business" in the state. 
Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 2008). The Texas Supreme
Court has held that "section 17.042's broad language extends Texas courts' personal
jurisdiction as far as the federal constitutional requirements of due process will
permit." BMC Software, 83 S.W.3d at 795. 

 Initially, the plaintiff bears the burden of pleading allegations sufficient to
bring a nonresident defendant within the terms of the Texas long-arm statute. Am.
Type Culture Collection, 83 S.W.3d at 807. However, when a nonresident defendant
files a special appearance, that defendant assumes the burden of negating all bases of
personal jurisdiction that the plaintiff has alleged. Id.

 Personal jurisdiction over nonresident defendants is constitutional when two
conditions are met: (1) the defendant has established minimum contacts with the
forum state and (2) the exercise of jurisdiction comports with traditional notions of
fair play and substantial justice. Id. at 806 (citing Int'l Shoe Co. v. Washington, 326
U.S. 310, 316, 66 S. Ct. 154, 158 (1945)). A nonresident defendant's minimum
contacts must derive from purposeful availment: a nonresident defendant must have
"purposefully availed" itself of the privileges and benefits of conducting business in
the foreign jurisdiction to establish sufficient contacts with the forum to confer
personal jurisdiction. Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462,
474-76, 105 S. Ct. 2174, 2183-84 (1985)); Xenos Yuen v. Fisher, 227 S.W.3d 193,
200 (Tex. App.--Houston [1st Dist.] 2007, no pet.). An act or acts "by which the
defendant purposefully avails itself of the privilege of conducting activities" in Texas
and "thus invok[es] the benefits and protections" of Texas law, constitutes sufficient
contact with Texas to confer personal jurisdiction. Michiana Easy Livin' Country,
Inc. v. Holten, 168 S.W.3d 777, 784 (Tex. 2005) (quoting Hanson v. Denckla, 357
U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958)).

 We consider three elements of purposeful availment. See Michiana Easy Livin'
Country, 168 S.W.3d at 785; see also First Oil PLC v. ATP Oil & Gas Corp., No.
01-07-00703-CV, 2008 WL 2186781, at * 12-3 (Tex. App.--Houston [1st Dist.] May
22, 2008, no pet.). First, we consider only the defendant's own actions, not those of
the plaintiff or any other third party. Michiana Easy Livin' Country, 168 S.W.3d at
785; First Oil PLC, 2008 WL 2186781, at *12; see also U-Anchor Adver., Inc. v.
Burt, 553 S.W.2d 760, 762-63 (Tex. 1977) (quoting Hanson, 357 U.S. at 253,
78 S. Ct. at 1240 (1958) ("The unilateral activity of those who claim some
relationship with a non-resident defendant cannot satisfy the requirement of contact
with the forum State. The application of that rule will vary with the quality and
nature of the defendant's activity, but it is essential in each case that there be some
act by which the defendant purposefully avails itself of the privilege of conducting
activities within the forum State, thus invoking the benefits and protections of its
laws.")).

 Second, the activities must be purposeful, not random, isolated, or fortuitous.
Michiana Easy Livin' Country, 168 S.W.3d at 785; First Oil PLC, 2008 WL
2186781, at *12. "It is the quality rather than the quantity of contacts that is
determinative." First Oil PLC, 2008 WL 2186781, at *12 (emphasis in original).
Third, the defendant must seek some benefit, advantage, or profit by virtue of its
activities in the proposed forum state, because this element is based on the notion of
implied consent. Michiana Easy Livin' Country, 168 S.W.3d at 785; First Oil PLC,
2008 WL 2186781, at *12.

 Our jurisdictional analysis is further divided into general and specific personal
jurisdiction. CSR, Ltd. v. Link, 925 S.W.2d 591, 595 (Tex. 1996). General
jurisdiction will attach when "a defendant's contacts in a forum are continuous and
systematic permitting the forum to exercise personal jurisdiction over the defendant
even if the cause of action did not arise from or relate to activities conducted within
the forum state." Id. To support general jurisdiction, the defendant's forum activities
must have been "substantial," which requires stronger evidence of contacts than for
specific personal jurisdiction. Preussag Aktiengesellschaft v. Coleman, 16 S.W.3d
110, 114 (Tex. App.--Houston [1st Dist.] 2000, pet. dism'd w.o.j.). 

 Specific jurisdiction lies when the defendant's alleged liability arises from or
is related to an activity conducted within the forum. BMC Software, 83 S.W.3d at
796. "For a nonresident defendant's forum contacts to support an exercise of specific
jurisdiction, there must be a substantial connection between those contacts and the
operative facts of the litigation." Moki Mac River Expeditions v. Drugg, 221 S.W.3d
569, 585 (Tex. 2007). This requirement assesses "the strength of the necessary
connection between the defendant, the forum, and the litigation." Id.

Internet Use & Personal Jurisdiction

 Internet usage is divided into three categories, using a sliding scale, for the
purposes of establishing personal jurisdiction. Reiff v. Roy, 115 S.W.3d 700, 705
(Tex. App.--Dallas 2003, pet. denied). (2)
 "At one end of the scale are websites clearly
used for transacting business over the Internet, such as entering into contracts and
knowing and repeated transmission of files of information, which may be sufficient
to establish minimum contacts with a state." Id. "On the other end of the spectrum
are 'passive' websites that are used only for advertising over the Internet and are not
sufficient to establish minimum contacts even though they are accessible to residents
of a particular state." Id. at 705-06. "In the middle are 'interactive' websites that
allow the 'exchange' of information between a potential customer and a host
computer. Id. at 706. Jurisdiction in cases involving interactive websites is
determined by the degree of interaction. Id. 



Discussion

 CAB's website was more than a purely passive website. The website provided
advertising and some interactivity, because customers were able to email CAB
through the website to schedule a test drive or request additional information about
the vehicle. But the website did not allow a customer to enter into a contract or
purchase a vehicle directly; rather, it routed the customer to eBay, where CAB had
no control over who would be the highest bidder. Because the degree of interactivity
falls between the two extremes, we look beyond the internet activity to the degree of
interaction between the parties. See Karstetter, 184 S.W.3d at 405. 

 As to specific jurisdiction, the record shows that Dawson initiated the
conversations with CAB and received the vehicle in Florida. There is no evidence
that CAB made misrepresentations to Dawson in Texas. In fact, the record shows that
the car initially malfunctioned while outside of Texas as well. Nothing in the record
suggests that CAB's potential liability arises from or is related to an activity
conducted within the forum. See BMC Software, 83 S.W.3d at 796; see also Moki
Mac River Expeditions, 221 S.W.3d at 585. Therefore, we conclude that specific
jurisdiction does not exist.

 As to general jurisdiction, the record shows that CAB sold 43 vehicles to Texas
purchasers, but the record does not quantify CAB's total sales. During the same time
period CAB shipped, or arranged for shipping, nineteen of those vehicles to Texas. 
There is no indication in the record that CAB targeted Texas customers in any way. 
Nothing in the record shows that CAB maintained a physical presence in Texas,
performed any business activities in Texas, or otherwise structures its business affairs
to benefit from the Texas laws.

 The Texas Supreme Court has held that an 18-year history of sales to Texas
residents was insufficient to confer general jurisdiction, when Texas sales accounted
for 3.5% of its total sales and title to the goods purchased passed outside of Texas. 
Am. Type Culture Collection, 83 S.W.3d 801, 807-09 (Tex. 2002). In American Type
Culture Collection, the defendant also purchased supplies from over 33 Texas
vendors over a five-year period and sent representatives to five scientific conferences
in Texas over a seven-year period. Id. at 808. But the defendant did not advertise in
Texas or maintain a physical presence in Texas. Id. at 810. It performed its business
services outside of Texas and constructed its contracts to ensure it did not benefit
from Texas laws. Id. The supreme court concluded that these factors, taken together,
did not establish a pattern of continuing and systematic activity sufficient to support
the exercise of personal jurisdiction in Texas. Id. at 809-10.

 Likewise, we hold that CAB's activities do not establish a pattern of continuing
and systematic activity sufficient to support the exercise of personal jurisdiction in
Texas. We hold that the trial court erred in denying CAB's special appearance.

Conclusion

 We reverse the trial court's order denying CAB's special appearance and
render judgment dismissing the case against it for lack of personal jurisdiction. The
Clerk of this Court is directed to issue the mandate immediately. See Tex. R. App. P.
18.6.




 Sam Nuchia

 Justice


Panel consists of Chief Justice Radack and Justices Nuchia and Higley.




 
1. "The usual eBay auction process is, after almost a decade in existence, now a matter
of common knowledge of which the Court takes judicial notice. See Fox v. West
Palm Beach, 383 F.2d 189, 194 (5th Cir.1967) ('The most frequent application of the
judicial notice doctrine is common knowledge.') A seller advertises an item on the
eBay interface, using a template. The seller establishes a minimum initial bid and a
deadline for the item's auction to end. Buyers may then bid for the item through the
eBay interface, which for each item posts the current bid and the time remaining. At
the expiration of the auction period, the highest bidder wins the item. EBay puts the
seller and winning buyer in contact by email to arrange payment and shipping." 
Action Tapes, Inc. v. Weaver, No. Civ. 3:05-CV-1693-H, 2005 WL 3199706, at *2
(N.D. Tex. Nov. 23, 2005).

2. This test was first created in Zippo Manufacturing Co. v. Zippo Dot Com, Inc. 952 F. Supp.
1119, 1124 (W. D. Pa. 1997), and it has been adopted in the Fifth Circuit, Mink v. AAAA Dev. LLC,
190 F.3d 333, 336 (5th Cir. 1999), and applied by many Texas courts of appeals. See GJP, Inc. v.
Ghosh, 251 S.W.3d 854, 876 n. 21 (Tex. App.--Austin 2008, no pet.); Karstetter v. Voss, 184
S.W.3d 396, 404 (Tex. App.--Dallas 2006, no pet.); Exito Elec. Co., Ltd. v. Trejo, 166 S.W.3d 839,
858 (Tex. App.--Corpus Christi 2005, no pet.); Townsend v. Univ. Hosp.--Univ. Of Colo., 83
S.W.3d 913, 922 (Tex. App.--Texarkana 2002, pet. denied); Experimental Aircraft Ass'n, Inc. v.
Doctor, 76 S.W.3d 496, 507 (Tex. App.--Houston [14th Dist.] 2002, no pet.); Michel v. Rocket
Eng'g Corp., 45 S.W.3d 658, 677 (Tex. App.--Fort Worth 2001, no pet.); Gessmann v. Stephens,
51 S.W.3d 329, 338 (Tex. App.--Tyler 2001, no pet.); Riviera Operating Corp. v. Dawson, 29
S.W.3d 905, 911 (Tex. App.--Beaumont 2000, pet. denied); Jones v. Beech Aircraft Corp., 995
S.W.2d 767, 772 (Tex. App.--San Antonio 1999, pet dism. w.o.j.).